IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-141

 No. COA19-1055

 Filed 20 April 2021

 Gaston County, No. 08 CRS 68290

 STATE OF NORTH CAROLINA

 v.

 MARK BRADLEY CARVER

 Appeal by the State from order entered 12 June 2019 by Judge Christopher W.

 Bragg in Gaston County Superior Court. Heard in the Court of Appeals 13 January

 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L.
 Hyde, for the State.

 North Carolina Center on Actual Innocence, by Christine C. Mumma and Guy
 J. Loranger, for defendant.

 DIETZ, Judge.

¶1 Ordinarily, when a trial court allows a motion for appropriate relief and grants

 a criminal defendant a new trial, the State has no right to appeal. Instead, our

 General Statutes permit the State to ask for discretionary appellate review through

 a petition for a writ of certiorari.

¶2 But there is one exception. When a trial court allows an MAR and orders a new

 trial on the ground of newly discovered evidence, the State has a right to appeal “but
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

 only on questions of law.” N.C. Gen. § 15A-1445(a)(2).

¶3 In this criminal case, the trial court granted an MAR and ordered a new trial

 on two grounds: ineffective assistance of counsel and newly discovery evidence. The

 State concedes that these are mutually exclusive—grounds for a new trial based on

 newly discovered evidence cannot also be grounds for a claim of ineffective assistance

 because, if the evidence was available to counsel through the exercise of due diligence,

 then the evidence cannot be considered “newly discovered” as a matter of law.

¶4 The State appealed the trial court’s grant of a new trial on these two grounds

 through a notice of appeal. The State did not petition for a writ of certiorari, even

 after the defendant moved to dismiss on the basis of Section 15A-1445(a)(2).

¶5 As explained below, we are constrained by precedent to dismiss this appeal.

 Under this Court’s precedent, in an appeal of right based on Section 15A-1445(a)(2),

 we can review issues beyond the newly discovered evidence only if those issues are

 intertwined with the newly discovered evidence issue. Here, it is the opposite. The

 ineffective assistance claim is not, and cannot be, intertwined and is based on entirely

 separate facts and reasoning. Because the State has no right to appeal the ruling on

 the ineffective assistance claim, and because the State did not petition for a writ of

 certiorari, we dismiss the appeal on the ineffective assistance claim for lack of

 appellate jurisdiction and, as a result, dismiss the appeal on the newly discovered

 evidence claim as moot.
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

 Facts and Procedural History

¶6 During the spring of 2008, Irina Yarmolenko was a student at UNC Charlotte,

 where she worked as a photographer for the school paper. In the last week of April

 2008, she spoke with her editor about photographing the Olympic trials being held at

 the U.S. National Whitewater Center in Charlotte. Around 12:30 p.m. on 5 May 2008,

 two jet skiers on the Catawba river saw a blue car on the embankment near the water.

 They found Yarmolenko’s body beside the car with a rope around her neck, across the

 river from the Whitewater Center. The State theorized that someone had strangled

 Yarmolenko and pushed her car down the bank.

¶7 Investigators attempted to lift fingerprints from the car but none of them had

 sufficient detail to allow for comparison. On the car, investigators found what is

 known as “touch DNA” from skin cells. The State alleged that the predominant profile

 of a swabbing taken from the recovered DNA above the driver’s side rear door

 matched Defendant Mark Carver’s DNA profile. The State also alleged that the

 predominant profile of swabbings taken from the interior front passenger door glass

 and arm rest matched the DNA profile of Carver’s cousin, Neal Cassada. Carver

 repeatedly denied that he saw or touched Yarmolenko or her car.

¶8 On 12 December 2008, the Mount Holly Police Department arrested Carver

 and Cassada. A grand jury indicted both men for first degree murder and conspiracy

 to commit first degree murder. Cassada died of a heart attack before his 2010 trial
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

 date.

¶9 At Carver’s trial, the State’s evidence showed that Carver and Cassada had

 been fishing near the area where Irina Yarmolenko’s body was found. The State relied

 on other circumstantial evidence including the DNA evidence to prove its case. Carver

 presented no evidence at trial.

¶ 10 The jury found Carver guilty of first degree murder. He received a mandatory

 life sentence. A divided panel of this Court upheld Carver’s conviction and the

 Supreme Court affirmed that decision. State v. Carver, 221 N.C. App. 120, 725 S.E.2d

 902 (2012), aff’d per curiam, 366 N.C. 372, 736 S.E.2d 172 (2013).

¶ 11 Several years later, Carver moved for appropriate relief and asserted actual

 innocence. Carver argued that he received ineffective assistance of counsel at his trial

 and that there was newly discovered evidence based on advances in DNA analysis.

 He also asserted that the State wrongly withheld incriminating information about

 another suspect.

¶ 12 In 2017, the trial court ordered an evidentiary hearing on Carver’s motion for

 appropriate relief. The hearing took place in 2019. Carver and the State presented a

 combined 25 witnesses.

¶ 13 The evidence at the MAR hearing showed that, at the time of the crime, Carver

 suffered from carpal tunnel syndrome that required multiple surgeries. Dr. Vikram

 Shukla had treated Carver for mental health issues since 2005. Dr. Shukla described
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

 Carver as a “well-controlled paranoid schizophrenic” who took his medication. Dr.

 Shukla explained that, at the time of the crime, Carver was overweight and could not

 walk fast due to his asthma. Psychologist Ashley McKinney evaluated Carver in

 November 2016 and determined he had an “extremely low range” IQ of 61. Carver’s

 family and friends testified that he could not read or write, needed help filling out

 forms, and struggled with memory and details. Carver’s family and friends described

 how Carver struggled to lift heavy objects and hold items. Testimony indicated that

 Carver needs help with “anything physical,” such as carrying groceries, loading his

 boat, netting fish, and tying his shoes.

¶ 14 The hearing provided numerous details regarding Carver’s representation by

 his trial counsel. Counsel knew that Carver received disability payments and suffered

 from carpal tunnel syndrome. Counsel also was aware of medical issues for both

 Carver and his cousin that were relevant to whether they could have committed the

 physical attack. Carver’s counsel requested and received $4,000 from Indigent

 Defense Services to get a psychological evaluation of Carver. That evaluation never

 took place. Counsel knew Carver was illiterate and suffered from mental illness.

 Counsel did not obtain Carver’s medical records.

¶ 15 In February 2010, Carver’s counsel requested and received Indigent Defense

 Services funds for a DNA expert. He hired retired UNC Charlotte professor Dr. Ron

 Ostrowski. Counsel did not obtain Dr. Ostrowski’s curriculum vitae or review his
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

 prior testimony. Dr. Ostrowski gave Carver’s counsel “very rudimentary” instruction

 on the “nuts and bolts of DNA.” He told counsel that the State’s DNA evidence was

 “good science” and advised counsel not to interview the State’s DNA experts. Carver’s

 counsel did not receive a final report from Dr. Ostrowski and did not ask many of Dr.

 Ostrowski’s recommended cross-examination questions at trial.

¶ 16 Dr. Maher Noureddine testified as a DNA expert at the MAR hearing. He

 stated that the SBI Crime Lab used “subjective” policies and procedures in DNA

 mixture interpretation during the time period when State analysts reviewed the

 touch DNA evidence in Carver’s case. He explained that accepted DNA analysis

 guidelines from the Scientific Working Group on DNA Analysis Methods advised

 more “objective” interpretation of DNA mixtures. During the hearing, Dr. Noureddine

 estimated that 75-80 percent of forensic labs across the country had adopted the

 guidelines by the end of 2010. The SBI Crime Lab did not use these recommended

 guidelines when analyzing the DNA evidence in Carver’s case.

¶ 17 Dr. Noureddine used the “more accurate and objective interpretation

 standards” developed by the Scientific Working Group on DNA Analysis Methods to

 review the SBI Crime Lab’s interpretation of the DNA mixtures in Carver’s case. He

 issued a report on 20 November 2016. His report concluded that the DNA mixture

 profile at the original 2011 trial could not be used for “any reliable matching” using

 current DNA techniques. According to the report, the profile was “inconclusive” and
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

 was not a confirmed match to Carver’s DNA profile.

¶ 18 On 12 June 2019, the trial court granted Carver’s motion for appropriate relief

 on grounds of ineffective assistance of counsel and newly discovered evidence. The

 trial court denied Carver’s remaining claims. In granting Carver’s ineffective

 assistance of counsel claim, the court concluded that it was “not reasonable” that

 Carver’s trial counsel failed to investigate his medical conditions and intellectual

 disabilities. The court also concluded that it was “not reasonable” that Carver’s

 counsel failed to “independently and adequately research, investigate and educate

 himself on the science related to the one key piece of evidence in this case, ‘Touch

 DNA.’”

¶ 19 Regarding the newly discovered evidence, the court accepted and adopted Dr.

 Noureddine’s report, opinions, and conclusions “as facts for the purposes of

 supporting this Order.” The trial court reasoned that new advances in the

 interpretation of DNA mixtures, which the SBI Crime Lab did not use during Carver’s

 March 2011 trial, made the physical evidence “doubtful at best.” The court held that

 Carver met his burden of proof and established both claims by a preponderance of the

 evidence and granted a new trial. The State appealed.

 Analysis

¶ 20 We first address Carver’s motion to dismiss on the basis that the State has no

 right to appeal the grant of a new trial based on ineffective assistance of counsel.
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

¶ 21 “[T]he State’s right to appeal in a criminal case is statutory, and statutes

 authorizing an appeal by the State in criminal cases are strictly construed.” State v.

 Howard, 247 N.C. App. 193, 202, 783 S.E.2d 786, 793 (2016). Ordinarily, the State

 does not have a right to appeal from an order granting a criminal defendant’s motion

 for appropriate relief. Instead, the State is limited to petitioning for a writ of

 certiorari—a form of discretionary appellate review. N.C. Gen. Stat. § 15A-1422(c)(3).

 But there is one exception: the General Statutes provide the State with a limited right

 to appeal “[u]pon the granting of a motion for a new trial on the ground of newly

 discovered or newly available evidence but only on questions of law.” Id. § 15A-

 1445(a)(2).

¶ 22 Relying on this language from Section 15A-1445(a)(2), the State argues that it

 has a right to appeal from every ruling in the trial court’s order in this case, including

 all issues concerning ineffective assistance of counsel, because the trial court “granted

 a new trial based in part on newly discovered evidence” and “the State has not taken

 appeal from any particular issue but from the trial court’s order granting a new trial.”

 In other words, the State believes it has a right to appeal because the order contains

 a grant of a motion for a new trial on newly discovered evidence—which the State has

 a right to appeal on questions of law—and thus every other portion of the challenged

 order becomes appealable by right as well.

¶ 23 This argument fails for several reasons. First, it runs counter to settled
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

 principles of appellate jurisdiction. Our jurisdictional doctrine does not recognize

 pendent appellate jurisdiction. So, for example, if a trial court denies the State’s

 motion to dismiss based on sovereign immunity—a ruling that is immediately

 appealable—the State ordinarily cannot appeal the denial of its motion to dismiss on

 other grounds, even if those other rulings are contained in the same order. Carl v.

 State, 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008). Instead, a right to appeal

 those other issues exists only if this Court finds those issues “inextricably intertwined

 with the issues before this Court as of right.” Id.

¶ 24 This Court applied the “inextricably intertwined” rule in the MAR context in

 Howard. In that case, “the trial court granted defendant’s MAR on three different

 legal grounds: (1) newly discovered evidence, (2) constitutional violations, and (3)

 ‘favorable’ post-conviction DNA test results.” Howard, 247 N.C. App. at 201, 783

 S.E.2d at 792. We held that “since all of the relief granted to defendant was

 inextricably linked to, and based on, what the court found to be newly discovered

 evidence, the State properly relied on subdivision 15A–1445(a)(2) as its ground for

 appellate review.” Id. at 205, 783 S.E.2d at 794.

¶ 25 In its argument, the State relies largely on another case, State v. Peterson, in

 which this Court held that “because the trial court granted defendant’s MAR based,

 in part, on newly discovered evidence, the State had the right to appeal the MAR

 order.” 228 N.C. App. 339, 343, 744 S.E.2d 153, 157 (2013). The State argues that
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

 Peterson rejected the “inextricably intertwined” doctrine and instead created a much

 broader rule for appeals in MAR cases. But the Peterson court resolved the case solely

 on the newly discovered evidence issue, explaining that it need not reach the

 remaining grounds on which the trial court granted a new trial. Id. at 347, 744 S.E.2d

 at 159. Moreover, in Howard, this Court examined Peterson and cited it in support of

 its “inextricably linked” holding. Howard, 247 N.C. App. at 205, 783 S.E.2d at 794.

 This indicates that Peterson and Howard are harmonized, and we must follow the

 holding of the most recent of those decisions, which is Howard. See State v. Gonzalez,

 263 N.C. App. 527, 531, 823 S.E.2d 886, 888 (2019).

¶ 26 Unlike the MAR grounds in Howard, which this Court concluded were

 inextricably linked, the newly discovered evidence issue and the ineffective assistance

 issue in this case are not inextricably linked. To the contrary—as the State conceded

 at oral argument—they are mutually exclusive. See State v. Rhodes, 366 N.C. 532,

 537, 743 S.E.2d 37, 40 (2013). The newly discovered evidence claim is based on

 evidence that was unavailable to the defendant at the time of trial. The ineffective

 assistance claim is based on other, separate evidence that the trial court found to be

 available to the defendant had his counsel exercised due diligence. Thus, these two

 claims are based on entirely separate facts and legal issues. They are not inextricably

 intertwined and thus the right to appeal one ruling does not confer a right to appeal

 the other. Carl, 192 N.C. App. at 550, 665 S.E.2d at 793.
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

¶ 27 Even beyond these general jurisdictional principles, there is another reason

 why the State does not have a right to appeal every issue in the challenged order: the

 statute limits the State’s right to appeal to the “granting of a motion for a new trial

 on the ground of newly discovered or newly available evidence but only on questions

 of law.” N.C. Gen. Stat. § 15A-1445(a)(2) (emphasis added). The State’s argument

 would render the phrase “but only on questions of law” superfluous. In the State’s

 view, so long as the appeal is based, in part, on the grant of a new trial, the State can

 appeal all issues in that order, whether they involve questions of law or not. Indeed,

 a central part of the State’s appeal is its challenge to the trial court’s findings of fact

 concerning ineffective assistance, which the State contends “are not supported by

 evidence.” But that interpretation would require us to ignore the specific limitations

 on the right to appeal that are contained in the statute—the opposite of what we must

 do for a statute that is “strictly construed” against the State’s right to appeal.

 Howard, 247 N.C. App. at 202, 783 S.E.2d at 793.

¶ 28 Finally, we note that the State was not without options for seeking appellate

 review in this context. The General Statutes expressly permit the State to petition

 for a writ of certiorari to review an adverse MAR ruling. N.C. Gen. Stat. § 15A-

 1422(c)(3). The State chose not to file a petition for a writ of certiorari in this case,

 even after Carver moved to dismiss this appeal. Instead, the State asserted that this

 Court should walk back its holding in Howard and broaden the State’s ability to
 STATE V. CARVER

 2021-NCCOA-141

 Opinion of the Court

 appeal MAR rulings unfavorable to the State as a matter of right. Even if we believed

 the statute conferred this broader right to appeal—and we do not—we lack the

 authority to depart from our holding in Howard. See In re Civil Penalty, 324 N.C. 373,

 384, 379 S.E.2d 30, 36 (1989). If the State is determined to fight the applicability of

 the “inextricably intertwined” principle in the MAR context, it will need to ask the

 Supreme Court to exercise its constitutional authority to conduct further review of

 Howard and the resulting jurisdictional doctrine.

¶ 29 In sum, we dismiss the State’s appeal from the portion of the challenged order

 that grants Carver a new trial based on ineffective assistance of counsel. This, in

 turn, means the remaining portion of this appeal is rendered moot because the

 question of whether the trial court erred by also granting a new trial based on newly

 discovered evidence “cannot have any practical effect” on the outcome of this case—

 either way, Carver will receive a new trial. State v. Joiner, __ N.C. App. __, __, 849

 S.E.2d 106, 110 (2020).

 Conclusion

¶ 30 We dismiss for lack of appellate jurisdiction the portion of this appeal

 challenging the trial court’s grant of a new trial on the basis of ineffective assistance

 of counsel. We dismiss the remaining portion of the appeal as moot.

 DISMISSED.

 Judges ZACHARY and COLLINS concur.