STATE OF NORTH CAROLINA v. MARK BRADLEY CARVER

No. COA11-1382

(Filed 5 June 2012)

**1. Homicide—first-degree murder—sufficient evidence—defendant near crime scene—DNA matched to defendant**

The trial court did not err in a first-degree murder case by denying defendant's motion to dismiss. There was sufficient evidence that defendant committed the murder, including that at the time the victim's body was discovered defendant was fishing at a spot a short distance from the crime scene and had been there for several hours, and that while defendant repeatedly denied ever touching the victim's vehicle, DNA found on the victim's vehicle was, with an extremely high probability, matched to defendant.

**2. Homicide—first-degree murder—jury question—acting in concert—question not answered directly—elements of first- and second-degree murder instructed upon**

The trial court did not err in a first-degree murder case by refusing to answer the jury's question about whether it was still to consider acting in concert. Although the trial court did not answer the question directly, the trial court did review the elements of first- and second-degree murder in its reinstruction.

**3. Homicide—first-degree murder—record not sufficient—jury instruction sufficient**

The trial court did not err in a first-degree murder case by allowing the State to urge the jury to convict defendant under the doctrine of acting in concert when the trial court did not instruct the jury on acting in concert. Defendant failed to satisfy his burden of presenting an adequate record to support his contention. Further, the trial court's instruction and reinstruction consis-

tently and adequately conveyed to the jury that the State was required to prove that *defendant* killed the victim.

Appeal by Defendant from judgment dated 18 March 2011 by Judge Timothy S. Kincaid in Gaston County Superior Court. Heard in the Court of Appeals 24 April 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General Danielle Marquis Elder, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse Jr., for Defendant.*

STEPHENS, Judge.

Following his indictment on one count of first-degree murder, Defendant Mark Bradley Carver pled not guilty to the charge and was tried by a jury in Gaston County Superior Court, the Honorable Timothy S. Kincaid presiding. The evidence presented by the State tended to show that the victim was found dead beside her car on the shore of the Catawba River, and that Carver and his cousin were fishing close by at the time the victim's body was discovered and near the time the victim was murdered. The victim had been strangled to death with a ribbon from a gift bag in her car, the drawstring of her sweatshirt, and a bungee cord similar to another cord in the trunk of her car. Law enforcement's investigation of the murder revealed that DNA samples taken from the victim's car matched Carver's and his cousin's DNA profiles. When Carver was confronted with this evidence, he denied, as he repeatedly had done before, ever seeing or touching the victim or her car. Further, despite his statements that he had never seen the victim, Carver told law enforcement officers that the victim was a "little thing," and he demonstrated the victim's height relative to his own.

Following the presentation of evidence and after the trial court instructed the jury on the charges of first- and second-degree murder, the jury found Carver guilty of first-degree murder. The trial court sentenced Carver to life imprisonment without parole. Carver appeals.

[1] On appeal, Carver first argues that the trial court erred by denying his motion to dismiss because there was insufficient evidence that Carver committed the murder. We disagree. A trial court properly denies a motion to dismiss based on an alleged absence of evidence

that the defendant committed the charged offense where the court determines that there is substantial evidence—*i.e.*, "relevant evidence that a reasonable mind might accept as adequate to support a conclusion"—that the defendant committed the offense charged. *State v. Cross*, 345 N.C 713, 716-17, 483 S.E.2d 432, 434 (1997). This Court reviews *de novo* a trial court's ruling on a motion to dismiss, and we view the evidence in the light most favorable to the State, giving the State every reasonable inference therefrom. *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007).

In this case, there is only circumstantial evidence to show that Carver committed the murder: at the time the victim's body was discovered, Carver was fishing at a spot a short distance from the crime scene and had been there for several hours; and Carver repeatedly denied ever touching the victim's vehicle, but DNA found on the victim's vehicle was, with an extremely high probability, matched to Carver.[1] "Most murder cases are proved through circumstantial evidence," *State v. Banks*, ____ N.C. App. ____, ____, 706 S.E.2d 807, 813 (2011), and where the evidence presented is circumstantial, "the question [] is whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978) (internal quotation marks omitted). Such an inference was permissible from the circumstances present in *State v. Miller*, 289 N.C. 1, 220 S.E.2d 572 (1975), where our Supreme Court held that the existence of physical evidence establishing a defendant's presence at the crime scene, combined with the defendant's statement that he was never present at the crime scene and the absence of any evidence that defendant was ever lawfully present at the crime scene, permits the inference that the defendant committed the crime and left the physical evidence during the crime's commission. 289 N.C. at 6, 220 S.E.2d at 575. In *Miller*, as in this case, where the defendant's statement that he was never present at, and never touched any part of, the crime scene was shown by physical evidence—in that case, fingerprints; in this case, DNA—to be false, "the most compelling permissible inference arising from [the] defendant's falsehood" is that he left the physical evidence at the crime scene in the course of committing the crime.[2] *See id.* Otherwise, had his DNA

---

1. A DNA sample found on the victim's car was "126 million times more likely to be observed from [] Carver[, a Caucasian,] than if it came from another unrelated individual in the North Carolina Caucasian population."

2. We note that although the physical evidence in *Miller* was the defendant's fingerprints and not his DNA, the logic of the rule from *Miller* applies equally to DNA and fingerprints, and the only potential difference in application of the rule to DNA is the

been left at any other time and under lawful circumstances, "he would have so stated when the potentially incriminating presence of his [DNA] was brought to his attention by the [law enforcement] officers." *See id.*

Carver's denial and the DNA's contradiction thereof, viewed in the light most favorable to the State, are sufficient to establish that the DNA could only have been left at the time the offense was committed. *See id.; see also State v. Wade*, 181 N.C. App. 295, 299, 639 S.E.2d 82, 86 (2007) ("Statements by the defendant that he had never been at the crime scene are sufficient to show that a fingerprint lifted from the premises could only have been impressed at the time of the crime."). The establishment of that fact warrants denial of Carver's motion to dismiss. *Cross*, 345 N.C at 718, 483 S.E.2d at 435 (where defendant contends that there was insufficient evidence of his guilt, evidence showing that the fingerprint "could only have been impressed at the time the crime was committed," "standing alone, was sufficient to send [the] case to the jury"). Accordingly, we conclude that the trial court did not err in denying Carver's motion to dismiss. This is so despite Carver's erroneous contention that, absent evidence of motive, the State failed to present substantial evidence that Carver murdered the victim in this case. "Motive is not an element of first-degree murder, nor is its absence a defense," *State v. Elliot*, 344 N.C. 242, 273, 475 S.E.2d 202, 216 (1996), *cert. denied*, 520 U.S. 1106, 137 L. Ed. 2d 312 (1997), and while it is "relevant to identify an accused as the perpetrator of the crime," *State v. Bell*, 65 N.C. App. 234, 238, 309 S.E.2d 464, 467 (1983), *aff'd per curiam*, 311 N.C. 299, 316 S.E.2d 72 (1984), the State presented sufficient evidence to identify Carver as the perpetrator by proving Carver's presence near the scene of the murder near the time of death in combination with his DNA-controverted statement that he never saw or touched the victim's car. Carver's argument is overruled.

---

strength of the conclusion as to the defendant's presence supported by the physical evidence, *i.e.*, that fingerprint evidence may be so accurate as to conclusively establish a defendant's presence while DNA evidence may not. *See id.* at 3-4, 6, 220 S.E.2d at 574, 575 ("The use of fingerprint evidence for identification purposes is so general and so accurate that in many cases it has been expressly declared that the courts will take judicial notice thereof."; "Defendant's thumbprint on the lock conclusively establishes that defendant was [at the crime scene] *at some unspecified time*." (emphasis in original)). However, because Carver concedes in his brief that the DNA evidence established his presence at the crime scene in this case, stating that the only connection between himself and the victim was "his having touched her car," we need not address the accuracy and ubiquity of DNA analysis *vis-à-vis* fingerprint analysis, and we find that the rule from *Miller* is perfectly applicable in this case.

**[2]** Carver next argues that the trial court erred by "refusing to answer the jury's question about whether it was 'still to consider acting in concert.' " We disagree.

Once the jury had begun their deliberations, they sent a written question to the trial judge, asking, "Are we still to consider acting in concert?" The following colloquy between the court and counsel then ensued:

> THE COURT: . . . . Of course, the [c]ourt didn't instruct them on acting in concert so it would be—it would probably be appropriate to go ahead and read the instruction to them and tell them that the law that they are to consider is the law that the [c]ourt has given them without stepping into that minefield.
>
> [Prosecutor]: That would be acceptable to the State.
>
> [Defense counsel]: Yes, sir.

Thereafter, the trial court reinstructed the jury on the law that the court read to the jury in the initial instructions. In neither instance did the court charge the jury on an acting in concert theory, having earlier denied the State's request for such an instruction.

We first note that defense counsel neither objected when the trial court announced its decision to reinstruct the jury with the same instructions as those given before the jury began its deliberations, nor did defense counsel note an objection when given an opportunity after the court's reinstruction. As such, Carver failed to properly preserve this issue for appellate review. *See State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991) (holding that where jurors requested clarification on an instruction, and the defendant's trial counsel agreed to the court's plan to reread all instructions on the elements of the offense, the defendant "will not be heard to complain on appeal" that the instructions should have been otherwise); N.C. R. App. P. 10(a) (requiring a defendant to object and be heard outside the presence of the jury to properly preserve a claim of error in a jury charge).

Further, were this argument properly preserved, it would certainly be overruled. Carver erroneously bases his argument that the trial court's refusal to directly answer the jury's question was improper on our Supreme Court's decision in *State v. Hockett*, in which the trial court refused to answer the jury's questions concerning the law as instructed and the Supreme Court ordered a new trial, stating that "the trial court should have at least reviewed the ele-

ments of the offenses if it was not going to directly answer the [jury's] question as defense counsel had requested." 309 N.C. 794, 802, 309 S.E.2d 249, 253 (1983); *see also State v. Moore*, 339 N.C. 456, 465, 451 S.E.2d 232, 236 (1994) (explaining the holding in *Hockett*). As the trial court here did review the elements of first- and second-degree murder in its reinstruction, the court did not run afoul of the holding in *Hockett*. Carver's argument is overruled.

[3] Relatedly, Carver argues that the trial court's decision to not instruct the jury on acting in concert, but to allow the State to present to the jury the State's "theory of the case," which Carver contends urged the jury to convict Carver under the doctrine of acting in concert, was erroneous and compounded the alleged error from the trial court's failure to directly answer the jury's question. We are unpersuaded.

The doctrine of acting in concert allows a defendant to be found guilty for crimes committed by another person if that person and the defendant join in a common purpose to commit the crime. *State v. Evans*, 346 N.C. 221, 228, 485 S.E.2d 271, 275 (1997), *cert. denied*, 522 U.S. 1057, 139 L. Ed. 2d 653 (1998). Presumably, Carver's argument is based upon the contention that the State, in its closing argument, informed the jurors that they could convict Carver of murder even if they determined that Carver's cousin had committed the murder. However, because the closing arguments were not transcribed and are not before this Court on appeal, Carver has failed to satisfy his burden of presenting an adequate record to support his contention. *See State v. Brogden*, 329 N.C. 534, 546, 407 S.E.2d 158, 166 (1991) (noting that the defendant has the burden of providing an appellate record adequate to allow determination of the defendant's issues). As such, we cannot conclude that the alleged arguments by the State were prejudicial to Carver. *State v. Moore*, 75 N.C. App. 543, 548, 331 S.E.2d 251, 254 (noting that the appellate court cannot assume or speculate that there was prejudicial error when none appears in the record), *disc. review denied*, 315 N.C. 188, 337 S.E.2d 862 (1985). Furthermore, the trial court's instruction and reinstruction consistently and adequately conveyed to the jury that the State was required to prove that *Carver* killed the victim. The court instructed the jury that they could find Carver guilty of first-degree murder only if the State proved beyond a reasonable doubt: (1) "that [Carver] intentionally and with malice killed [the victim]"; (2) "that [Carver's] acts were a proximate cause of [the victim's] death"; (3) "that [Carver] intended to kill [the victim]"; (4) "that [Carver] acted with premeditation"; and (5) "that [Carver] acted with deliberation." "The law presumes that

jurors follow the court's instructions." *State v. Tirado*, 358 N.C. 551, 581, 599 S.E.2d 515, 535 (2004), *cert. denied*, 544 U.S. 909, 161 L. Ed. 2d 285 (2005). While the State's "theory of the case" may have been that Carver and his cousin were both involved in the murder, Carver has presented nothing to indicate that the jury ignored the court's instructions and attributed any of Carver's cousin's actions to Carver. Accordingly, we cannot conclude that the trial court's decision to not instruct the jury on acting in concert, but to allow the State to argue its theory of the case was error. Carver's argument is overruled.

NO ERROR.

Judge MCGEE concurs.

Judge HUNTER, ROBERT N., JR., dissents with a separate opinion.

HUNTER, JR., Robert N., Judge, dissenting.

I dissent from the majority opinion and would hold the trial court erred in denying the defendant's motion to dismiss the first degree murder charge due to a lack of substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.

" 'Upon [the] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a *reasonable mind* might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78—79, 265 S.E.2d 164, 169 (1980) (emphasis added). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135 (1995).

The majority aptly notes that most murder cases are proven through circumstantial evidence. However,

[i]f the evidence presented is circumstantial, the court must consider whether a *reasonable inference* of defendant's guilt may be drawn from the circumstances. Once the court decides that a *reasonable inference* of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, *taken singly or in combination,* satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

*Fritsch,* 351 N.C. at 379, 526 S.E.2d at 455 (citations and quotation marks omitted) (second alteration in original) (first two emphases added). Moreover,

[w]hen the evidence establishing the defendant as the perpetrator of the crime is circumstantial, courts often [look to] proof of motive, opportunity, capability and identity to determine whether a reasonable inference of defendant's guilt may be inferred or whether there is merely a suspicion that the defendant is the perpetrator.

*State v. Hayden,* ____ N.C. App. ____, ____, 711 S.E.2d 492, 494 (2011) (quotation marks and citation omitted) (alteration in original). However, " 'evidence of either motive or opportunity alone is insufficient to carry a case to the jury.' " *Id.* at ____, 711 S.E.2d at 495 (citation omitted) (where the trial court erred by denying the defendant's motion to dismiss when the State presented substantial motive evidence but the only evidence of opportunity was evidence that placed the defendant near the location where the victim was found) (quoting *State v. Bell,* 65 N.C. App. 234, 240—41, 309 S.E.2d 464, 468—69 (1983) (where the trial court erred by denying the defendant's motion to dismiss when the State presented substantial opportunity evidence but no evidence of motive)); *but c.f. State v. Stone,* 323 N.C. 447, 453-54, 373 S.E.2d 430, 434 (1988) (affirming the trial court's denial of the defendant's motion to dismiss because though the State presented no evidence of motive, it presented *more* circumstantial evidence of opportunity than was presented in *Bell,* including evidence that the defendant's gun was the one used to kill the victim, that the defendant's car's tire treads matched those found at the crime scene, that the defendant had ample time to commit the murder, and that the murder was committed using ammunition matching that found in the defendant's possession).

"When the question is whether evidence of *both* motive and opportunity will be sufficient to survive a motion to dismiss, the answer . . . [depends on] the strength of the evidence of motive and

opportunity, as well as other available evidence, rather than an easily quantifiable 'bright line' test." *Bell*, 65 N.C. App. at 239, 309 S.E.2d at 468. Instead, "[e]ach case turns on its own peculiar facts and a decision in one case is rarely controlling in another." *State v. White*, 293 N.C. 91, 95, 235 S.E.2d 55, 58 (1977). In the case *sub judice*, similar to *Bell* and *Stone*, the State presented zero evidence of motive. It is this absence of motive evidence *combined* with the lack of opportunity evidence that makes this case analogous to *Hayden* and *Bell* and distinguishable from *Stone*.

The evidence at trial showed the following: the defendant was fishing with his cousin at a location near the spot where the victim was found strangled to death, lying outside of her car. Police saw the defendant loading fishing equipment into his car when the victim's body was found but did not question him at that time. No evidence (such as matching tire treads or footprints as in *Stone* and *Barnett*) was presented that the defendant actually traveled the path between the two locations. The defendant later returned to the crime scene and asked police if he could retrieve fishnets he left while fishing earlier that day. He was denied access. Along with the defendant and his cousin, at least five other people were near the area where the victim was found, one of whom actually discovered her body. No DNA sample was taken from the man who discovered the victim. Only after the police canvassed surrounding areas did a detective speak to the defendant at his home and learn he was fishing near where the victim was found. After this interview, the defendant was not arrested nor was he even labeled a suspect in the murder.

Unlike in *Stone* and *Barnett*, where the State presented evidence connecting the defendants to the murder weapons, the State here presented no evidence whatsoever connecting the defendant to any of the three ligatures used to suffocate the victim. Moreover, the coroner testifying for the State could not determine the victim's time of death, making it unreasonable for a juror to infer the victim could have died only during the time the defendant was fishing at the nearby location.

The majority places great emphasis on the fact that the defendant's DNA was found on the victim's vehicle. However, the majority fails to mention that this DNA was not semen, blood, or saliva DNA; it was *touch* DNA, which is DNA gathered from skin cells, the testing for which is relatively new and not as accurate as blood or saliva DNA testing. Moreover, it is noteworthy that the defendant's DNA (touch

or otherwise) was not found anywhere else on the outside or the inside of the vehicle. The defendant's DNA also was not found anywhere on the victim nor was it found on any of the three ligatures used to suffocate the victim. His cousin's touch DNA, however, was found on the inside of the car near the passenger's seat.

Nevertheless, relying on *State v. Miller*, the majority concludes that the defendant's touch DNA on the victim's vehicle along with the defendant's statement to the police that he was never at the crime scene and the absence of any evidence that the defendant was lawfully present at the crime scene permits the inference that the defendant committed the crime and left his touch DNA during the crime's commission. *See State v. Miller*, 289 N.C. 1, 6, 220 S.E.2d 572, 575 (1975). The majority notes that our Supreme Court in *Miller* held that when a defendant says he was never present at the crime scene but his fingerprints are found at the scene and no evidence is presented that he was ever lawfully at the crime scene, "the most compelling permissible inference arising from [the] defendant's falsehood" is that he left the fingerprints at the crime scene in the course of committing the crime. *See id.* Otherwise, had the fingerprints been left at another time, the defendant "would have so stated when the potentially incriminating presence of his [fingerprints] was brought to his attention by the officers." *Id.*

I, however, disagree with the majority's application of *Miller* to the case *sub judice*. First, *Miller* requires that fingerprint evidence be "accompanied by substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed" before allowing the inference that the defendant must have been present during the commission of the crime. *Id.* at 4, 220 S.E.2d at 574. The only evidence indicating the defendant left the touch DNA on the car at the time of the murder is that he happened to be fishing near the location where the victim was found. There is no other evidence tying the defendant to the crime scene. As such, I cannot hold that substantial evidence of circumstances accompanies the defendant's touch DNA on the victim's car to indicate such DNA could only have been left at the time the murder was committed.

Moreover, this case is distinguishable from *Miller* because the physical evidence found at the scene was touch DNA, not fingerprint

evidence.[1] The majority acknowledges this difference yet nevertheless equates the two types of evidence. The majority chooses not to address "the accuracy and ubiquity of DNA analysis vis-à-vis fingerprint analysis" because the defendant "concedes in his brief that the DNA evidence established his presence at the crime scene in this case, stating that the only connection between himself and the victim was 'his having touched her car.' " I, however, do not read the defendant's brief to have made such a concession. Admitting to having touched the victim's car does not admit presence at the crime scene because cars are mobile objects, often parked in public places and touched, intentionally or not, by countless people throughout a given day. As the defendant's touch DNA was matched only to the outside of the victim's vehicle and only in one place, one cannot draw a reasonable inference that the defendant must only have touched the victim's car at the crime scene and thus was involved in her murder. Such an inference "is far too tenuous to be considered as substantial proof of anything." *See Bell*, 65 N.C. App. at 241, 309. S.E.2d at 469 (where the inference that the defendant owned the knife used to kill the victim was too tenuous to constitute substantial evidence even though a knife consistent with the one used to kill the victim was found near the defendant). In fact, the State's own touch DNA expert testified there is no way to tell *when* the defendant's touch DNA sample was left on the vehicle. "In order for this Court to hold that the State has presented sufficient evidence of defendant's opportunity to commit the crime in question, the State must have presented at trial evidence not only placing the defendant at the scene of the crime, but placing him there at the time the crime was committed." *Hayden*, ____ N.C. App. at ____, 711 S.E.2d at 497.

As I do not equate the defendant's concession to touching the victim's car to mean he was present at the crime scene, I find it necessary to address the accuracy and ubiquity of touch DNA analysis versus fingerprint testing to determine whether the logic of *Miller* applies equally to touch DNA as it does to fingerprints. I would hold that it does not. The State's second expert on touch DNA testified at trial that touch DNA testing is a relatively new technique and is not as reliable as saliva and blood DNA testing. The expert also described a phenomenon known as secondary skin cell transfers, where if person A touches person B, and person B touches a pen, person A's DNA can be found on the pen. On the other hand, "[t]he use of fingerprint evidence for identification purposes is so general and so accurate that in

---

1. The defendant's fingerprints were not found anywhere on the victim or her vehicle.

many cases it has been expressly declared that the courts will take judicial notice thereof." *Miller*, 289 N.C. at 6, 220 S.E.2d at 575. Moreover, while our Supreme Court in *Miller* references ten cases that review the sufficiency of fingerprint evidence to establish the identity of an accused before announcing the rule that the majority relies on in this case, I cannot find even one case in North Carolina that has reviewed the sufficiency of touch DNA evidence to establish the identity of an accused, much less any case in this state that even discusses the accuracy of touch DNA. With such little guidance on the accuracy of touch DNA combined with the fact that the defendant's touch DNA was found on the outside of the victim's mobile car and could have been left at any time, I cannot apply the rule in *Miller* here because I cannot equate fingerprint and touch DNA analysis.

The only remaining relevant evidence in our review of the trial court's denial of the defendant's motion to dismiss is that during questioning of the defendant (which happened consensually six times), the defendant consistently denied knowing the victim. However, when the officer interrogating him instructed him to stand and describe how tall the victim was, Defendant stood and indicated how tall she was compared to his own height. He said he did not know her but maybe saw her on television. Testimony from two officers indicates both that the case was not televised and that it was highly televised. Taken in the light most favorable to the State, I admit this raises a suspicion of the defendant's guilt; however, it does not place him at the scene nor connect him to the brutal strangulation of the victim. It is merely insufficient to surpass "the realm of suspicion and conjecture" and does not constitute substantial evidence connecting the defendant to the crime. *See State v. Cutler*, 271 N.C. 379, 383, 156 S.E.2d 679, 682 (1967). In *Cutler*, the State presented that, on the day the victim was murdered, a truck similar to the defendant's was seen at the scene of the crime both before and after the body was discovered, and the truck's interior was covered in human blood. *Id.* at 380–81, 156 S.E.2d at 680. Also on the day of the murder, the State showed that the defendant went to the home of a relative 500 yards from the crime scene and was described as drunk and "bloody as a hog" with a large gash on his head; after the murder, the defendant was found by police wearing bloody clothing and was found in possession of a knife that was covered in both human blood and a hair deemed "similar" to the chest hair of the victim. *Id.* at 381–82, 156 S.E.2d at 681. Still, our Supreme Court reversed the trial court's denial of the defendant's

motion for nonsuit for lack of substantial evidence because there was no motive for the defendant to kill the victim nor was there sufficient opportunity evidence connecting the defend ant to the crime; the evidence amounted to only a "conjecture" that the defendant committed the crime. *Id.* at 383–84, 156 S.E.2d at 682.

Here, like in *Cutler*, the evidence presented is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator. *See also State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983) (If evidence presented is "sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator," the motion to dismiss should be allowed, "even though the suspicion aroused by the evidence is strong." (internal citation omitted)). Accordingly, I cannot agree that the *reasonable* mind standard would allow a court to accept the above evidence as adequate to support the conclusion that the defendant committed first degree murder on a theory of premeditation and deliberation.

I also note in this case the trial court dismissed the charge of conspiracy to commit first degree murder due to lack of substantial evidence connecting the defendant to the crime. In my opinion, that decision supports my view that there is no substantial evidence to support the defendant's commission of first degree murder alone. Therefore, I would reverse the judgment of the trial court.