DIETZ, Judge.
 

 *150
 
 On 7 January 2013, Jahaad Marshall and his brother broke into a Raleigh home, woke a husband and wife in their downstairs bedroom, and demanded money. Marshall and his brother separated the couple as they rummaged through the house. While Marshall stood at the top of the stairs, Marshall's brother took the wife into a room downstairs, forced her to remove her clothes, and then forced her to perform oral sex on him.
 

 Marshall's brother then led the wife, still nearly naked, up the stairs, where Marshall was waiting. As Marshall's brother went back downstairs to check on the husband, Marshall ran his hand over the wife's breast and buttocks and said, "Nice."
 

 At this point, the husband, who was being held in the downstairs bedroom, realized his wife was in danger. He began fighting with Marshall and his brother, both of whom were armed with handguns. His struggle with the two armed men lasted long enough for his wife to escape and call for help, but he was shot in the back, struck in the head, and left for dead as Marshall and his brother fled the scene.
 

 After a high-speed chase, police caught Marshall and his brother and recovered numerous items stolen from the home, including the husband's wallet and the wife's phone. A jury convicted Marshall of more than a dozen felonies, including attempted murder, assault with intent to kill, burglary, and numerous attempted sex offenses. The trial court sentenced Marshall to nearly 250 years in prison.
 

 Marshall raises two issues on appeal. First, during deliberations the jury asked the trial court to explain "the legal definition of intent." The State proposed that the court read to the jury the pattern instruction on intent. Marshall proposed a custom instruction that discussed specific intent, a standard applicable to some, but not all, of the charges. The
 
 *151
 
 court chose to give the State's instruction. Marshall argues on appeal that the trial court erred by choosing the State's
 
 *505
 
 instruction over his, and also by adding a sentence not requested by the State and not contained in the pattern instruction.
 

 As explained below, the trial court's decision to use the State's requested instruction was well within the court's broad discretion and was not erroneous. With respect to the sentence added by the trial court, Marshall did not object to that portion of the instruction and did not argue plain error on appeal. Thus, we decline to review the issue because it is unpreserved. We note, however, that in light of the substantial evidence of guilt in this case, even if we were to review this issue for plain error, we would fine none.
 

 Marshall also argues that there was insufficient evidence to convict him of both attempted first-degree sex offense and attempted first-degree rape. Marshall contends that the evidence was only sufficient to permit the jury to infer the intent to commit one of those offenses, not both.
 

 As explained below, we reject this argument. Marshall and his brother isolated the victim from her husband and one said, "Maybe we should," to which the other responded, "Yeah." Marshall's brother then forced the victim to remove her clothes and perform fellatio on him at gunpoint. Marshall later groped the victim's breast and buttocks and said, "Nice." At this point, the victim's husband, who had been confined in another room, realized his wife was in danger and fought back to protect her.
 

 Under long-standing legal precedent discussed in more detail below, this evidence is sufficient for a reasonable jury to infer that Marshall intended to engage in a continuous sexual assault involving both fellatio (like his brother) and ultimately rape, and that this continuous sexual assault was thwarted only because the victim's husband sacrificed himself so that his wife could escape. Accordingly, we reject Marshall's argument and find no error in his conviction and sentence.
 

 Facts and Procedural History
 

 At approximately 3:00 a.m. on 7 January 2013, the victims in this case, a husband and wife, awoke to find Jahaad Marshall and his brother standing at the foot of their bed in their downstairs bedroom. Marshall and his brother, clad in ski-masks, ordered the couple out of the bed and onto the floor. The two brothers were armed with handguns and demanded money.
 

 *152
 
 After rummaging through the home, Marshall and his brother ordered the wife into the hallway. Once they had isolated the wife from her husband, she overheard one of the brothers say, "Maybe we should" and the other respond, "Yeah," followed by laughter. Marshall's brother then led the wife to another room, forced her to remove her clothes, and forced her to perform fellatio while he held a gun to the side of her head. During this time, Marshall waited at the top of the stairs. Marshall's brother later pushed the wife toward the stairs where Marshall waited. When she reached the top of the stairs, Marshall, also holding a gun, grabbed her and ran his hand over her breast and buttocks and said, "Nice."
 

 As Marshall groped the wife near the stairs, Marshall's brother went to the downstairs bedroom where the husband was held. The husband noticed that Marshall's brother was adjusting his pants and he yelled "Where's my wife? Is my wife ok?" The husband then began to struggle with Marshall's brother in an effort to escape and protect his wife. Marshall heard the struggle and joined the fight. This provided the wife with an opportunity to escape, and she jumped over the side of the stairs and ran out the front door. As she fled, she heard a gunshot.
 

 When police arrived, they found the husband on the floor severely wounded. He had been shot in the spine, rendering him a paraplegic. He also suffered life-threatening internal bleeding from a bullet that had lodged just centimeters from his heart. He also sustained at least one severe blow to the head, a bruised lung, and a broken finger that required surgery.
 

 A neighbor saw Marshall and his brother fleeing the scene and informed police. After a high-speed chase, police caught Marshall and his brother when the two wrecked their car. Police found the husband's wallet, the wife's iPhone, a black ski mask, and other evidence tying the brothers to the crime.
 

 *506
 
 The State charged Marshall with numerous counts of burglary, kidnapping, sex offense, attempted rape, attempted sex offense, armed robbery, assault, attempted murder, larceny, possession of stolen goods, and possession of a firearm by a felon. Many of these charges relied on the theory that Marshall acted in concert with his brother, whom the State alleged directly committed the acts. The case went to trial and the jury found Marshall guilty of two counts of first-degree kidnapping, assault with a deadly weapon with intent to kill inflicting serious injury, attempted murder, two counts of armed robbery, first-degree sex offense, attempted first-degree rape, attempted first-degree sex offense, and
 
 *153
 
 possession of a firearm by a convicted felon. The trial court sentenced Marshall to a minimum of 2,975 months in prison. Marshall appealed.
 
 [1]
 

 Analysis
 

 I. Jury Instructions
 

 Marshall first argues that the trial court erred when it answered the jury's question about the meaning of "intent." Specifically, Marshall argues that the trial court should have read to the jury the response that Marshall proposed and that the response the court actually provided was erroneous. As explained below, we reject Marshall's arguments.
 

 We first address Marshall's argument that the trial court erred by failing to give his requested instruction on specific intent. Section 15A-1234 of the General Statutes permits the judge "to give appropriate additional instruction to ... [r]espond to an inquiry of the jury made in open court." N.C. Gen.Stat. § 15A-1234(a)(1). Importantly, the trial court is not
 
 required
 
 to respond to a jury's questions during deliberations and, if it chooses to do so, the court's choice of whether to use counsel's requested response is "a matter within its discretion and will not be overturned absent a showing of abuse of discretion."
 
 State v. Herring,
 

 322 N.C. 733
 
 , 742,
 
 370 S.E.2d 363
 
 , 369 (1988).
 

 Here, the jury asked the court for an explanation of "the legal definition of intent." The State requested that the court respond by providing the pattern jury instruction on intent:
 

 Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. You arrive at the intent of a person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw therefrom.
 

 N.C.P.I. -Crim. 120. 10.
 

 Notably, this pattern jury instruction also includes a footnote setting out additional, optional instructions relating to specific intent and
 
 *154
 
 general intent.
 

 Id.
 

 In this case, the State charged Marshall with multiple offenses that included both specific intent and general intent crimes.
 

 Marshall asked the court to read a special, prepared instruction that did not include the pattern jury instruction language for intent but included language from the footnote in the pattern instruction concerning specific intent. Marshall's proposed instruction also referenced the crimes with which Marshall was charged that required specific intent, but not the other crimes with which Marshall was charged that required only general intent. This is Marshall's full proposed supplemental instruction:
 

 Attempted Murder and Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury are specific intent crimes. Specific Intent is a mental purpose, aim or design to accomplish a specific harm or result. If you do not find beyond a reasonable doubt that Jahaad Marshall acted with a specific intent to kill John Smith, then it would be your duty to return a verdict of not guilty on these charges.
 

 Marshall's proposed instruction appeared to assume that the jury's intent question only
 
 *507
 
 related to the specific intent crimes, although the jury did not say that.
 

 The State objected to the use of Marshall's proposed instruction on the ground that it was too specific and did not answer the question the jury actually asked. After hearing from the parties, the trial court chose to answer the jury's question using the pattern jury instruction on intent requested by the State, rather than Marshall's proposed instruction.
 

 That decision was not an abuse of discretion. As noted above, a trial court is not required to adopt the precise language requested by either party, even if that language is a correct statement of the law.
 
 Herring,
 

 322 N.C. at 742
 
 ,
 
 370 S.E.2d at 369
 
 . And here, the instruction requested by Marshall addressed only two of the many offenses with which Marshall was charged and, by referencing specific intent but not general intent, risked confusing the jury. Thus, we hold that the trial court did not abuse its discretion in declining to use Marshall's requested instruction.
 

 Marshall next argues that the trial court deviated from the pattern jury instruction on intent by adding an additional sentence stating that "[i]ntent is what a person reasonably expects or wants to occur." As explained below, this issue is not preserved for review.
 

 It is well-settled that when the trial court proposes its own jury instruction during a charge conference-particularly when that instruction was not requested by either party-a party who wishes to challenge
 
 *155
 
 that newly added instruction must object and state distinctly which portion of the instruction is objectionable and why.
 
 See
 
 N.C. R.App. P. 10(a)(2) ;
 
 State v. Roache,
 

 358 N.C. 243
 
 , 305,
 
 595 S.E.2d 381
 
 , 420-21 (2004),
 
 State v. Carver,
 

 221 N.C.App. 120
 
 , 124,
 
 725 S.E.2d 902
 
 , 905 (2012)
 
 aff'd,
 

 366 N.C. 372
 
 ,
 
 736 S.E.2d 172
 
 (2013) (per curiam).
 

 Here, both Marshall and the State submitted proposed instructions to be given in response to the jury's question. The court chose the pattern jury instruction requested by the State, but then added its own final sentence that neither party requested. The transcript of this conference, out of the jury's presence, demonstrates that the parties knew the court added that final, unrequested sentence:
 

 THE COURT: Well, I'm considering giving the jury, without instruction, that intent is a mental attitude seldom proved by direct evidence. It must ordinarily be proved by circumstances by which it may be inferred. You arrive at the intent of a person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw therefrom.
 
 Intent is what a person reasonably expects or wants to occur.
 
 How says the State?
 

 MR. ZELLINGER: Your Honor, could you read that last sentence again?
 

 THE COURT:
 
 Intent is what a person reasonably expects or wants to occur.
 

 MR. ZELLINGER: State's satisfied.
 

 THE COURT: How says the defendant?
 

 MR. THOMAS: Your Honor, we would request an instruction for that specific intent,
 
 but we don't need to be heard any further.
 

 Marshall's request that the court use his specific intent instruction is insufficient to preserve an objection to the newly added language from the trial court. The court already had heard from the parties and decided to provide the pattern jury instruction requested by the State, rather than the custom specific intent instruction submitted by Marshall. Now, the court proposed adding a new sentence not contained in the pattern jury instruction. To preserve an objection to
 
 that
 
 newly added sentence, which departed from the pattern instruction, Marshall needed to specifically object to
 
 that
 
 sentence and tell the trial court why it was improper.
 

 *156
 

 See
 

 State v. Tirado,
 

 358 N.C. 551
 
 , 574,
 
 599 S.E.2d 515
 
 , 531 (2004) ;
 
 State v. Ballard,
 

 193 N.C.App. 551
 
 , 554,
 
 668 S.E.2d 78
 
 , 80 (2008).
 

 If we were to hold that simply requesting that the court provide Marshall's desired instruction-which is what Marshall did-was sufficient to preserve an objection to this newly added sentence, it would undermine the purpose of requiring parties to state distinctly what portion of the jury instruction is
 
 *508
 
 objectionable and why.
 
 See
 
 N.C. R.App. P. 10(a)(2) ;
 
 State v. Oliphant,
 

 228 N.C.App. 692
 
 , 696,
 
 747 S.E.2d 117
 
 , 121 (2013) ( Rule 10(a)(2)'s purpose is to encourage parties to inform the trial court of instructional errors so that it can correct them before the jury deliberates, thereby eliminating the need for a new trial.).
 

 The parties already had debated which of their two proposed instructions was appropriate-the State's pattern jury instruction on intent, or Marshall's custom instruction on specific intent. The court chose the State's pattern jury instruction. When the trial court added its new sentence, not contained in the pattern instruction, and asked the parties if there were any objections, Marshall stated only "Your Honor, we would request an instruction for that specific intent, but we don't need to be heard any further." This fails to inform the trial court that Marshall found the newly added sentence to be erroneous. Accordingly, we hold that Marshall did not preserve his argument concerning the sentence added by the trial court.
 

 If an instructional error is not preserved below, it nevertheless may be reviewed for plain error when that error "is specifically and distinctly contended to amount to plain error" in the appellant's brief. N.C. R.App. P. 10(a)(4) ;
 
 State v. Gregory,
 

 342 N.C. 580
 
 , 584,
 
 467 S.E.2d 28
 
 , 31 (1996). But Marshall does not argue plain error in his brief. In very rare circumstances, typically involving capital cases, our state's appellate courts have invoked Rule 2 of the Rules of Appellate Procedure to suspend the requirements of Rule 10 and review an argument under plain error analysis even where the appellant did not request that we do so.
 
 See
 

 Gregory,
 

 342 N.C. at 584-85
 
 ,
 
 467 S.E.2d at 31-32
 
 .
 

 Our Supreme Court recently reiterated that a finding of plain error should be "applied cautiously and only in the exceptional case" where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."
 
 State v. Lawrence,
 

 365 N.C. 506
 
 , 516-17,
 
 723 S.E.2d 326
 
 , 333 (2012). Here, in light of the substantial evidence supporting each of Marshall's convictions, we would not find that the trial court's alleged error rose to the level of plain error. Accordingly, we decline to invoke Rule 2 and hold that this issue is not preserved for appellate review.
 

 *157
 

 II. Sufficiency of the Evidence
 

 Marshall next argues that the trial court should have granted his motion to dismiss the charge of attempted first-degree sexual offense for insufficient evidence. Specifically, Marshall argues that there was insufficient evidence for the jury to infer that he intended to force the victim to perform fellatio, the sexual act upon which the jury was instructed for that offense. As explained below, we reject this argument and find that there was sufficient evidence to support the jury's verdict.
 

 "In reviewing a motion to dismiss based on the sufficiency of the evidence, the scope of the court's review is to determine whether there is substantial evidence of each element of the charged offense."
 
 State v. Hardison,
 
 --- N.C.App. ----,
 
 779 S.E.2d 505
 
 , 507 (2015). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."
 

 Id.
 

 The evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference that might be drawn therefrom.
 

 Id.
 

 Here, there was sufficient evidence for the jury to infer Marshall's intent to compel the victim to perform fellatio. The evidence showed that, after Marshall separated the victim from her husband, the victim overheard Marshall or his brother say, "Maybe we should," and the other respond, "Yeah." Shortly after, Marshall's brother forced the victim to remove her clothes and then forced her to perform fellatio on him at gunpoint.
 

 Marshall's brother then pushed the victim toward the stairs where Marshall was waiting. When she reached the top of the stairs, Marshall, also armed with a gun, grabbed the victim, ran his hand over her breast and buttocks, and said, "Nice." This evidence, taken together and viewed in the light most favorable to the State, is sufficient for a
 
 *509
 
 reasonable jury to infer that, had the victim's husband not fought back in an effort to protect his wife, Marshall would have forced the victim to perform fellatio, as his brother previously had done.
 

 Marshall also argues that there was insufficient evidence to infer that he intended to commit
 
 both
 
 first-degree rape and first-degree sex offense. We disagree. In
 
 State v. Hall,
 
 a case repeatedly cited by both parties, this Court noted that "sexually motivated assaults may give rise to an inference that defendant intended to rape his victim notwithstanding that other inferences also are possible."
 
 85 N.C.App. 447
 
 , 452,
 
 355 S.E.2d 250
 
 , 253-54 (1987). The Court then summarized a number of previous decisions, including the Supreme Court's decision in
 
 State v. Whitaker,
 

 316 N.C. 515
 
 ,
 
 342 S.E.2d 514
 
 (1986). In
 
 Whitaker,
 
 the assailant told the
 
 *158
 
 victim "I want to eat you"-a slang phrase often used to describe cunnilingus-and instructed the victim to pull her pants down, at which point the victim resisted and ultimately escaped.
 

 Id.
 

 at 517
 
 ,
 
 342 S.E.2d at 516
 
 . The Supreme Court held there was sufficient evidence to infer intent to commit rape from that conduct.
 

 Id.
 

 at 519
 
 ;
 
 342 S.E.2d at 517
 
 .
 

 We see nothing in
 
 Whitaker
 
 that suggests the State in that case could not also have charged the defendant with attempted first-degree sex offense based on the defendant's intent to commit cunnilingus, as evidenced from the statement "I want to eat you." As the Supreme Court observed in
 
 Whitaker,
 
 juries can infer that a defendant intends to engage in "continuous" sexual assaults that involve rape as well as other sex offenses.
 
 316 N.C. at 520
 
 ,
 
 342 S.E.2d at 518
 
 .
 

 When viewed in the light most favorable to the State, the particular facts in this case support that inference. Marshall and his brother isolated the victim from her husband and one said, "Maybe we should," to which the other responded, "Yeah." Marshall's brother then forced the victim to remove her clothes and perform fellatio on him at gunpoint. Marshall later groped the victim's breast and buttocks and said, "Nice." At this point, the victim's husband, who had been confined in another room, discovered that his wife was in danger and fought back to protect her. Under
 
 Whitaker
 
 and
 
 Hall,
 
 this evidence is sufficient for a reasonable jury to infer that Marshall intended to engage in a continuous sexual assault involving both fellatio (like his brother) and ultimately rape, and that this continuous sexual assault was prevented only because the victim's husband intervened and saved her from these crimes. Accordingly, we reject Marshall's argument.
 

 Conclusion
 

 We find no error in the trial court's judgments.
 

 NO ERROR.
 

 Judges MCCULLOUGH and TYSON concur.
 

 [1]
 

 After pronouncing its sentence, the trial court stated that Marshall "objects and gives notice to the North Carolina Court of Appeals," but it is not clear from the record that Marshall in fact stated verbally, on the record, that he appealed. Marshall filed a petition for writ of certiorari in the event that his notice of appeal was inadequate. To ensure that this Court has appellate jurisdiction to address the merits of the case, we allow the petition for writ of certiorari.