IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-141

No. COA19-1055

Filed 20 April 2021

Gaston County, No. 08 CRS 68290

STATE OF NORTH CAROLINA

v.

MARK BRADLEY CARVER

Appeal by the State from order entered 12 June 2019 by Judge Christopher W. Bragg in Gaston County Superior Court. Heard in the Court of Appeals 13 January 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L. Hyde, for the State.*

*North Carolina Center on Actual Innocence, by Christine C. Mumma and Guy J. Loranger, for defendant.*

DIETZ, Judge.

¶ 1      Ordinarily, when a trial court allows a motion for appropriate relief and grants a criminal defendant a new trial, the State has no right to appeal. Instead, our General Statutes permit the State to ask for discretionary appellate review through a petition for a writ of certiorari.

¶ 2      But there is one exception. When a trial court allows an MAR and orders a new trial on the ground of newly discovered evidence, the State has a right to appeal "but

only on questions of law." N.C. Gen. § 15A-1445(a)(2).

¶ 3        In this criminal case, the trial court granted an MAR and ordered a new trial on *two* grounds: ineffective assistance of counsel and newly discovery evidence. The State concedes that these are mutually exclusive—grounds for a new trial based on newly discovered evidence cannot also be grounds for a claim of ineffective assistance because, if the evidence was available to counsel through the exercise of due diligence, then the evidence cannot be considered "newly discovered" as a matter of law.

¶ 4        The State appealed the trial court's grant of a new trial on these two grounds through a notice of appeal. The State did not petition for a writ of certiorari, even after the defendant moved to dismiss on the basis of Section 15A-1445(a)(2).

¶ 5        As explained below, we are constrained by precedent to dismiss this appeal. Under this Court's precedent, in an appeal of right based on Section 15A-1445(a)(2), we can review issues beyond the newly discovered evidence only if those issues are intertwined with the newly discovered evidence issue. Here, it is the opposite. The ineffective assistance claim is not, and cannot be, intertwined and is based on entirely separate facts and reasoning. Because the State has no right to appeal the ruling on the ineffective assistance claim, and because the State did not petition for a writ of certiorari, we dismiss the appeal on the ineffective assistance claim for lack of appellate jurisdiction and, as a result, dismiss the appeal on the newly discovered evidence claim as moot.

**Facts and Procedural History**

¶ 6     During the spring of 2008, Irina Yarmolenko was a student at UNC Charlotte, where she worked as a photographer for the school paper. In the last week of April 2008, she spoke with her editor about photographing the Olympic trials being held at the U.S. National Whitewater Center in Charlotte. Around 12:30 p.m. on 5 May 2008, two jet skiers on the Catawba river saw a blue car on the embankment near the water. They found Yarmolenko's body beside the car with a rope around her neck, across the river from the Whitewater Center. The State theorized that someone had strangled Yarmolenko and pushed her car down the bank.

¶ 7     Investigators attempted to lift fingerprints from the car but none of them had sufficient detail to allow for comparison. On the car, investigators found what is known as "touch DNA" from skin cells. The State alleged that the predominant profile of a swabbing taken from the recovered DNA above the driver's side rear door matched Defendant Mark Carver's DNA profile. The State also alleged that the predominant profile of swabbings taken from the interior front passenger door glass and arm rest matched the DNA profile of Carver's cousin, Neal Cassada. Carver repeatedly denied that he saw or touched Yarmolenko or her car.

¶ 8     On 12 December 2008, the Mount Holly Police Department arrested Carver and Cassada. A grand jury indicted both men for first degree murder and conspiracy to commit first degree murder. Cassada died of a heart attack before his 2010 trial

date.

¶ 9 At Carver's trial, the State's evidence showed that Carver and Cassada had been fishing near the area where Irina Yarmolenko's body was found. The State relied on other circumstantial evidence including the DNA evidence to prove its case. Carver presented no evidence at trial.

¶ 10 The jury found Carver guilty of first degree murder. He received a mandatory life sentence. A divided panel of this Court upheld Carver's conviction and the Supreme Court affirmed that decision. *State v. Carver*, 221 N.C. App. 120, 725 S.E.2d 902 (2012), *aff'd per curiam*, 366 N.C. 372, 736 S.E.2d 172 (2013).

¶ 11 Several years later, Carver moved for appropriate relief and asserted actual innocence. Carver argued that he received ineffective assistance of counsel at his trial and that there was newly discovered evidence based on advances in DNA analysis. He also asserted that the State wrongly withheld incriminating information about another suspect.

¶ 12 In 2017, the trial court ordered an evidentiary hearing on Carver's motion for appropriate relief. The hearing took place in 2019. Carver and the State presented a combined 25 witnesses.

¶ 13 The evidence at the MAR hearing showed that, at the time of the crime, Carver suffered from carpal tunnel syndrome that required multiple surgeries. Dr. Vikram Shukla had treated Carver for mental health issues since 2005. Dr. Shukla described

Carver as a "well-controlled paranoid schizophrenic" who took his medication. Dr. Shukla explained that, at the time of the crime, Carver was overweight and could not walk fast due to his asthma. Psychologist Ashley McKinney evaluated Carver in November 2016 and determined he had an "extremely low range" IQ of 61. Carver's family and friends testified that he could not read or write, needed help filling out forms, and struggled with memory and details. Carver's family and friends described how Carver struggled to lift heavy objects and hold items. Testimony indicated that Carver needs help with "anything physical," such as carrying groceries, loading his boat, netting fish, and tying his shoes.

¶ 14    The hearing provided numerous details regarding Carver's representation by his trial counsel. Counsel knew that Carver received disability payments and suffered from carpal tunnel syndrome. Counsel also was aware of medical issues for both Carver and his cousin that were relevant to whether they could have committed the physical attack. Carver's counsel requested and received $4,000 from Indigent Defense Services to get a psychological evaluation of Carver. That evaluation never took place. Counsel knew Carver was illiterate and suffered from mental illness. Counsel did not obtain Carver's medical records.

¶ 15    In February 2010, Carver's counsel requested and received Indigent Defense Services funds for a DNA expert. He hired retired UNC Charlotte professor Dr. Ron Ostrowski. Counsel did not obtain Dr. Ostrowski's curriculum vitae or review his

prior testimony. Dr. Ostrowski gave Carver's counsel "very rudimentary" instruction on the "nuts and bolts of DNA." He told counsel that the State's DNA evidence was "good science" and advised counsel not to interview the State's DNA experts. Carver's counsel did not receive a final report from Dr. Ostrowski and did not ask many of Dr. Ostrowski's recommended cross-examination questions at trial.

¶ 16         Dr. Maher Noureddine testified as a DNA expert at the MAR hearing. He stated that the SBI Crime Lab used "subjective" policies and procedures in DNA mixture interpretation during the time period when State analysts reviewed the touch DNA evidence in Carver's case. He explained that accepted DNA analysis guidelines from the Scientific Working Group on DNA Analysis Methods advised more "objective" interpretation of DNA mixtures. During the hearing, Dr. Noureddine estimated that 75-80 percent of forensic labs across the country had adopted the guidelines by the end of 2010. The SBI Crime Lab did not use these recommended guidelines when analyzing the DNA evidence in Carver's case.

¶ 17         Dr. Noureddine used the "more accurate and objective interpretation standards" developed by the Scientific Working Group on DNA Analysis Methods to review the SBI Crime Lab's interpretation of the DNA mixtures in Carver's case. He issued a report on 20 November 2016. His report concluded that the DNA mixture profile at the original 2011 trial could not be used for "any reliable matching" using current DNA techniques. According to the report, the profile was "inconclusive" and

was not a confirmed match to Carver's DNA profile.

On 12 June 2019, the trial court granted Carver's motion for appropriate relief on grounds of ineffective assistance of counsel and newly discovered evidence. The trial court denied Carver's remaining claims. In granting Carver's ineffective assistance of counsel claim, the court concluded that it was "not reasonable" that Carver's trial counsel failed to investigate his medical conditions and intellectual disabilities. The court also concluded that it was "not reasonable" that Carver's counsel failed to "independently and adequately research, investigate and educate himself on the science related to the one key piece of evidence in this case, 'Touch DNA.'"

Regarding the newly discovered evidence, the court accepted and adopted Dr. Noureddine's report, opinions, and conclusions "as facts for the purposes of supporting this Order." The trial court reasoned that new advances in the interpretation of DNA mixtures, which the SBI Crime Lab did not use during Carver's March 2011 trial, made the physical evidence "doubtful at best." The court held that Carver met his burden of proof and established both claims by a preponderance of the evidence and granted a new trial. The State appealed.

**Analysis**

We first address Carver's motion to dismiss on the basis that the State has no right to appeal the grant of a new trial based on ineffective assistance of counsel.

¶ 21    "[T]he State's right to appeal in a criminal case is statutory, and statutes authorizing an appeal by the State in criminal cases are strictly construed." *State v. Howard*, 247 N.C. App. 193, 202, 783 S.E.2d 786, 793 (2016). Ordinarily, the State does not have a right to appeal from an order granting a criminal defendant's motion for appropriate relief. Instead, the State is limited to petitioning for a writ of certiorari—a form of discretionary appellate review. N.C. Gen. Stat. § 15A-1422(c)(3). But there is one exception: the General Statutes provide the State with a limited right to appeal "[u]pon the granting of a motion for a new trial on the ground of newly discovered or newly available evidence but only on questions of law." *Id.* § 15A-1445(a)(2).

¶ 22    Relying on this language from Section 15A-1445(a)(2), the State argues that it has a right to appeal from *every* ruling in the trial court's order in this case, including all issues concerning ineffective assistance of counsel, because the trial court "granted a new trial based in part on newly discovered evidence" and "the State has not taken appeal from any particular issue but from the trial court's order granting a new trial." In other words, the State believes it has a right to appeal because the order contains a grant of a motion for a new trial on newly discovered evidence—which the State has a right to appeal on questions of law—and thus every other portion of the challenged order becomes appealable by right as well.

¶ 23    This argument fails for several reasons. First, it runs counter to settled

principles of appellate jurisdiction. Our jurisdictional doctrine does not recognize pendent appellate jurisdiction. So, for example, if a trial court denies the State's motion to dismiss based on sovereign immunity—a ruling that is immediately appealable—the State ordinarily cannot appeal the denial of its motion to dismiss on other grounds, even if those other rulings are contained in the same order. *Carl v. State*, 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008). Instead, a right to appeal those other issues exists only if this Court finds those issues "inextricably intertwined with the issues before this Court as of right." *Id.*

¶ 24        This Court applied the "inextricably intertwined" rule in the MAR context in *Howard*. In that case, "the trial court granted defendant's MAR on three different legal grounds: (1) newly discovered evidence, (2) constitutional violations, and (3) 'favorable' post-conviction DNA test results." *Howard*, 247 N.C. App. at 201, 783 S.E.2d at 792. We held that "since all of the relief granted to defendant was inextricably linked to, and based on, what the court found to be newly discovered evidence, the State properly relied on subdivision 15A–1445(a)(2) as its ground for appellate review." *Id.* at 205, 783 S.E.2d at 794.

¶ 25        In its argument, the State relies largely on another case, *State v. Peterson*, in which this Court held that "because the trial court granted defendant's MAR based, in part, on newly discovered evidence, the State had the right to appeal the MAR order." 228 N.C. App. 339, 343, 744 S.E.2d 153, 157 (2013). The State argues that

*Peterson* rejected the "inextricably intertwined" doctrine and instead created a much broader rule for appeals in MAR cases. But the *Peterson* court resolved the case solely on the newly discovered evidence issue, explaining that it need not reach the remaining grounds on which the trial court granted a new trial. *Id.* at 347, 744 S.E.2d at 159. Moreover, in *Howard*, this Court examined *Peterson* and cited it in support of its "inextricably linked" holding. *Howard*, 247 N.C. App. at 205, 783 S.E.2d at 794. This indicates that *Peterson* and *Howard* are harmonized, and we must follow the holding of the most recent of those decisions, which is *Howard*. *See State v. Gonzalez*, 263 N.C. App. 527, 531, 823 S.E.2d 886, 888 (2019).

¶ 26     Unlike the MAR grounds in *Howard*, which this Court concluded were inextricably linked, the newly discovered evidence issue and the ineffective assistance issue in this case are not inextricably linked. To the contrary—as the State conceded at oral argument—they are mutually exclusive. *See State v. Rhodes*, 366 N.C. 532, 537, 743 S.E.2d 37, 40 (2013). The newly discovered evidence claim is based on evidence that was unavailable to the defendant at the time of trial. The ineffective assistance claim is based on other, separate evidence that the trial court found to be available to the defendant had his counsel exercised due diligence. Thus, these two claims are based on entirely separate facts and legal issues. They are not inextricably intertwined and thus the right to appeal one ruling does not confer a right to appeal the other. *Carl*, 192 N.C. App. at 550, 665 S.E.2d at 793.

¶ 27        Even beyond these general jurisdictional principles, there is another reason why the State does not have a right to appeal every issue in the challenged order: the statute limits the State's right to appeal to the "granting of a motion for a new trial on the ground of newly discovered or newly available evidence *but only on questions of law*." N.C. Gen. Stat. § 15A-1445(a)(2) (emphasis added). The State's argument would render the phrase "but only on questions of law" superfluous. In the State's view, so long as the appeal is based, in part, on the grant of a new trial, the State can appeal *all* issues in that order, whether they involve questions of law or not. Indeed, a central part of the State's appeal is its challenge to the trial court's findings of fact concerning ineffective assistance, which the State contends "are not supported by evidence." But that interpretation would require us to ignore the specific limitations on the right to appeal that are contained in the statute—the opposite of what we must do for a statute that is "strictly construed" against the State's right to appeal. *Howard*, 247 N.C. App. at 202, 783 S.E.2d at 793.

¶ 28        Finally, we note that the State was not without options for seeking appellate review in this context. The General Statutes expressly permit the State to petition for a writ of certiorari to review an adverse MAR ruling. N.C. Gen. Stat. § 15A-1422(c)(3). The State chose not to file a petition for a writ of certiorari in this case, even after Carver moved to dismiss this appeal. Instead, the State asserted that this Court should walk back its holding in *Howard* and broaden the State's ability to

appeal MAR rulings unfavorable to the State as a matter of right. Even if we believed the statute conferred this broader right to appeal—and we do not—we lack the authority to depart from our holding in *Howard*. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989). If the State is determined to fight the applicability of the "inextricably intertwined" principle in the MAR context, it will need to ask the Supreme Court to exercise its constitutional authority to conduct further review of *Howard* and the resulting jurisdictional doctrine.

¶ 29      In sum, we dismiss the State's appeal from the portion of the challenged order that grants Carver a new trial based on ineffective assistance of counsel. This, in turn, means the remaining portion of this appeal is rendered moot because the question of whether the trial court erred by also granting a new trial based on newly discovered evidence "cannot have any practical effect" on the outcome of this case—either way, Carver will receive a new trial. *State v. Joiner*, __ N.C. App. __, __, 849 S.E.2d 106, 110 (2020).

## Conclusion

¶ 30      We dismiss for lack of appellate jurisdiction the portion of this appeal challenging the trial court's grant of a new trial on the basis of ineffective assistance of counsel. We dismiss the remaining portion of the appeal as moot.

DISMISSED.

Judges ZACHARY and COLLINS concur.